UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

BARTOW C. DUTTON and EDNA R. DUTTON,

Plaintiffs,

v.					6:13-cv-58

UNITED STATES OF AMERICA,

Defendant.

## ORDER

### I. INTRODUCTION

Bartow C. Dutton[1] and Edna R. Dutton bring this action against the United States under the Federal Tort Claims Act ("FTCA") for damages he sustained at the Veterans Administration Medical Center ("VAMC") in Augusta. ECF No. 1 at 1-2. The United States moved for partial summary judgment on the issue of whether Dr. David H. Riggans was an independent contract physician at the time he provided care to Mr. Dutton. ECF No. 8. The Court lacks testimony from Dr. Riggans and is unable to conclude that the totality of the circumstances indicates he was an independent contractor, so the Court *DENIES* the United States' motion.

### II. BACKGROUND

The late Mr. Dutton was an Air Force veteran and eligible for medical care at the VAMC. ECF No. 1 at 1-2. On May 23, 2010 he was admitted to the VAMC in Augusta complaining of abdominal pain, vomiting, and bloody stools. *Id.* at 4. A series of diagnostic tests led to the determination that an angiography and angioplasty procedure would be performed on June 2 to stent a blocked artery. *Id.* That initial procedure did not go as planned, and the VAMC abandoned all further angio treatment for Mr. Dutton. *Id.*

Between June 2 and June 3, doctors at VAMC noted irregularities with Mr. Dutton's right leg. *Id.* at 5-7. Doctors at the VAMC transferred him to the Medical College of Georgia ("MCG") around noon on June 3. *Id.* at 7. On June 6, Dr. Gutam Agarwal amputated Mr. Dutton's right leg below the knee. *Id.* at 8. On June 16, Mr. Dutton underwent a second right leg amputation above the knee. *Id.* The Duttons brought this suit in 2013 claiming negligence in Mr. Dutton's medical care. *Id.*

### III. ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. . . . Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree

---
[1] Mr. Dutton died on August 19, 2013. ECF No. 17. Mrs. Dutton is now party to the case individually and as administrator of Mr. Dutton's estate. ECF No. 31.

about the inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.

*Patterson & Wilder Constr. Co., Inc. v. United States*, 226 F.3d 1269, 1273 (11th Cir. 2000) (emphasis omitted).

### B. The FTCA Standard

The sole issue on summary judgment is whether, as the United States contends, Dr. Riggans was an independent contractor and not a government employee. ECF No. 8 at 1. The FTCA waives the United States's sovereign immunity for wrongful acts or omissions of any government employee. *Patterson & Wilder*, 226 F.3d at 1273; *see also* 28 U.S.C. § 1346(b). An independent contractor is not a government employee under the FTCA, and a plaintiff may not recover against the United States for the torts of an independent contractor. 28 U.S.C. § 2671; *Means v. United States*, 176 F.3d 1376, 1378-79 (11th Cir. 1999).

The "control test" determines whether a person is an employee of the government. *Patterson & Wilder*, 226 F.3d at 1274. "Under this test, a person is an employee of the Government if the Government controls and supervises the day-to-day activities of the alleged tortfeasor during the relevant time." *Id.* "[T]he critical factor in making this determination is the authority of the principal to control the detailed physical performance of the contractor." *Logue v. United States*, 412 U.S. 521, 527-28 (1973). The provisions of the employment contract determine whether the government has reserved the right to control a doctor. *Bravo v. United States*, 532 F.3d 1154, 1160 (11th Cir. 2008). But because our ultimate inquiry is whether the government "controls and supervises" conduct, *Patterson & Wilder*, 226 F.3d at 1274, "summary judgment cannot rest on the terms of the contract alone." *Spitzer v. United States*, No. CV187-072, 1988 WL 363944, at *4 (S.D. Ga. Feb 16, 1988).

Thus, the Court must examine the contract between Dr. Riggans and VAMC to determine if the Government reserved control. The Court also considers the conduct of the parties in determining whether VAMC actually controlled Dr. Riggans. *See Bragg v. United States*, 810 F. Supp. 2d 1307, 1320 (N.D. Fla. 2011) (examining the totality of the relationship between the government and the doctors to determine if summary judgment on this issue is appropriate).

### C. Dr. Riggans and the VAMC

The parties to the contract at issue are the Department of Veterans Affairs ("VA") and Vascular Radiology Associates, II ("VRA"). ECF No. 8-1 at 6. Dr. Riggans was an employee of VRA. ECF No. 8 at 2. The contract expressly states that VRA shall 1) render services "in its capacity as an independent contractor," ECF No. 8-1 at 141; 2) provide its own workers' compensation and liability insurance, *id.* at 123, 142; 3) complete its own income and social security tax withholding, *id.* at 123 and 4) receive payment per service on a fee schedule, *id.* at 10-15. The contract also contained language by which VAMC

relinquished control over VRA physicians. *Id.* at 141-42.

The contract here contains all of the marks that courts have determined identify an independent contractor relationship. *See Bragg v. United States*, 810 F. Supp. 2d at 1316-17 (identifying an independent contractor clause, responsibility of payment of salary and insurance premiums, and the payment of taxes as marks of an independent contractor agreement); *Spitzer*, 1988 WL 363944 at *2-3 (identifying an independent contractor clause, obligation to obtain malpractice insurance, and payment pursuant to a fee schedule as marks of an independent contractor agreement).

Although the substance of the employment contract points to Dr. Riggans being an independent contractor and not a government employee, the Court reiterates that it must investigate control in the practical relationship between VAMC and Dr. Riggans. The Duttons attempt to demonstrate VAMC's actual control over Dr. Riggans in three ways: 1) his compulsory compliance with VAMC's informed consent system, ECF No. 27 at 4-5; 2) his obligation to seek permission on medical procedures from VAMC doctors, *id.* at 6; and 3) his designation as an employee in VAMC's identification system, ECF No. 27-3.

At this stage, these facts alone do not sufficiently illuminate the nature of Dr. Riggans's relationship with the VAMC. The Court determines that the totality of the relationship between Dr. Riggans and the VAMC is not indisputable without his testimony. *See Bragg*, 810 F. Supp. 2d at 1320 (examining the totality of the relationship between the government and the doctors to determine if summary judgment on this issue is appropriate). Dr. Riggans has rebuffed invitations to communicate with the United States Attorney. *See* ECF No. 29-1. Although VAMC officers suggested that the hospital upholds the requirements of the contracts, ECF No. 29 at 5-6, Dr. Riggans's testimony would speak to whether VAMC controlled *his* practice of medicine. For example, Dr. Riggans could testify that VAMC gave numerous stern directives on how to proceed in the operating room. *See Spitzer*, 1988 WL 363944 at *5 (considering an absence of governmental directives for operating room care in its determination that the doctors were independent contractors).

The United States addressed this issue, contending Dr. Riggans's failure to respond to its deposition request is evidence of his independent contractor status, but this is just an inference, and reasonable minds could differ on the inferences to be drawn from the Doctor's absence. *Cf. Patterson & Wilder*, 226 F.3d at 1273 ("If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.") (emphasis omitted).

Furthermore, in both *Bragg* and *Spitzer*, cases where the courts entered summary judgment in favor of the government, the respective courts benefitted from the deposition testimony of the doctors accused of malpractice. *See Bragg*, 810 F. Supp. 2d at 1313; *Spitzer*, 1988 WL 363944 at *5; *see also Del Valle v. Sanchez*, 170 F. Supp. 2d 1254, 1266 (S.D. Fla. 2001) (benefitting from doctors' testimony in determining they

were not government employees). The Court cannot consider the facts before it fully analogous to those cases.

### III. CONCLUSION

In light of the dearth of testimony from Dr. Riggans and the summary judgment standard of resolving all reasonable doubts in favor of the non-movant, *Patterson & Wilder*, 226 F.3d at 1273, the Court must ***DENY*** summary judgment on the issue of Dr. Riggans's status as an independent contractor.

This 13 day of January 2014.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA